**SMACK & SNACK, INC.,** Appellant, v. **MAYFIELD HEIGHTS** (City), et al, Appellee.
**SMACK & SNACK, INC.,** Appellee, v. **MAYFIELD HEIGHTS** (City), et al, etc., Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 24371, 24384. Decided March 31, 1958.

William J. Kraus, for appellant in Case No. 24,371 and for appellee in Case No. 24,384.

Squire, Sanders & Dempsey, for appellee in Case No. 24,371 and for appellants in Case No. 24,384.

(HUNSICKER, PJ, DOYLE, J, of the Ninth District, and HORNBECK, J, of the Second District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

This was an action for a declaratory judgment, relating to the validity of admission tax ordinances of the former village, and present city, of Mayfield Heights, Ohio, and to the applicability of such ordinances to certain aspects of the business conducted within the limits of the municipality by the petitioner, Smack & Snack, Inc.

Trial was had in the Court of Common Pleas of Cuyahoga County, and, from a judgment there rendered, which, in part, was for the plaintiff. and, in part, was for the defendants, we entertain the present appeals made by each of the litigants.

The following facts are before us:

The plaintiff is a corporation engaged in the business of owning and operating a golf driving range, a golf school, and a restaurant. The premises consist of about 15 acres of land, substantially enclosed by fence.

A building 60 x 30 feet in floor measurement houses the restaurant, and, in the rear thereof, with entrance thereto from the building, a golf driving range is established. There is maintained here a series of benches and rubber mats facing a golf driving range.

Members of the general public who come upon the premises, and who wish to drive golf balls onto the range from the mats, may rent a pail of 40 balls for a stipulated amount (formerly $1 a pail, presently 75c a pail), and then, using their own golf clubs or clubs provided free by the plaintiff-company, drive the balls onto the range. No charge is made for admission to the premises, and people may, if they desire, watch others use the facilities with no cost to them. While admission is free to the restaurant, a charge is made for food and drink. A golf instructor is available for those who desire lessons. A charge is made for lessons, and the money is kept by the instructor.

Recapitulating briefly:

Persons visiting the premises are neither required to rent golf balls, employ the instructor, or to purchase food and drink. They may enter, visit, and watch, without charge, as well as park their cars in a parking space on the premises.

At this point, it should perhaps be stated that the present law-suit involves the right to collect a 3% tax on the money received for the use of the golf balls on the plaintiff's golf driving range facilities.

Under now-repealed sections of the General' Code of Ohio (§5544-1 et seq GC), the state levied what was then characterized as an "admissions tax." In the year 1947, these statutes were repealed, and municipalities throughout the state entered this field of taxation, as was their right.

The then village of Mayfield Heights was one of such municipalities, and on April 21, 1948, passed its ordinance No. 1320, one of the two ordinances with which we are here concerned. This ordinance (No. 1320) in its pertinent part provided:

"Section 2. **Admissions Tax.** There is hereby levied and imposed upon every person who pays an admission charge to any place, including a tax on persons who are admitted free of charge or at reduced rates, to any place for which other persons pay a charge or a regular higher charge for the same or similar privileges or accommodations:

"(1) A tax of three per centum (3%) on the amounts paid for admission to any place, including admission by season ticket or subscription."

"Section 1. **Definitions.** For the purpose of this ordinance, words and phrases shall have the following meanings:

" 'Admission charge'—In addition to its usual and ordinary meaning, shall include a charge made for season tickets or subscriptions, a cover charge or a charge made for use of seats and tables, reserved or otherwise, and similar accommodations; a charge made for food and refreshments in any place where any free entertainment, recreation or amusement is provided; a charge made for rental or use of equipment or facilities for purposes of recreation or amusement, and where the rental of the equipment or facilities is necessary to the enjoyment of the privileges for which a general admission is charged, the combined charge shall be considered as the admission charge; and a charge made for automobile parking where the amount of the charge is determined according to the number of passengers in an automobile.

"'* * *

" 'Place'—Includes, but is not restricted to, theatres, dance halls, amphitheatres, auditoriums, stadiums, athletic pavilions and fields, golf courses, baseball and athletic parks, circuses, side shows, swimming pools, outdoor amusement parks, and such attractions as merry-go-rounds, ferris wheels, dodge-'ems, roller coasters, and observation towers."

As shown above, the village council defined the meaning of the word "place" when it imposed a 3% tax on the amounts paid for admission "to any place." It also defined "admission charge," as that term is used in Sec. 2 of the ordinance, supra.

The second ordinance with which we are here concerned was enacted in the year 1953. It is designated as "Ordinance No. 1953-51," and titled "An ordinance amending Ordinance No. 1320 levying an admission tax on persons paying admissions or who are admitted free or at reduced rates to any place; fixing the amount and providing for the collection thereof and prescribing penalties." This amending ordinance changed only the definition of the word "place," and added thereto "golf driving ranges" in addition to its former designation of "golf courses."

It appears that, following unsuccessful attempts by the former village of Mayfield Heights, and presently by the city of Mayfield Heights, to collect a 3% tax on the charge for the use of the golf balls, claiming that a tax on such charge was authorized under the respective ordinances, the municipality threatened court action against the plaintiff, and, as a consequence thereof, the plaintiff corporation filed this action for a declaratory judgment in the Court of Common Pleas.

The trial court, pursuant to trial, entered its judgment, in part, as follows:

"1. The Council of the city of Mayfield Heights has the power, and its predecessor, the council of the village of Mayfield Heights, had the power, to enact tax legislation applicable to all persons paying a charge for the rental or use of plaintiff's golf driving range facilities, and the council of the city of Mayfield Heights validly exercised that power when it enacted Ordinance No. 1953-51.

"2. Ordinance No. 1320 of the city of Mayfield Heights by its terms does not apply to persons using the plaintiff's golf driving range facilities and, therefore, does not require the plaintiff to collect a tax from them and remit it to the city of Mayfield Heights.

"3. Ordinance No. 1953-51 by its terms does apply to persons paying a charge for the rental or use of plaintiff's golf driving range facilities and does require the plaintiff to collect a tax from them and remit the same to the city of Mayfield Heights. Said ordinance having been validly enacted on July 20, 1953, as an emergency ordinance and having been signed on the same date by the mayor of the city of Mayfield Heights has been in full force and effect since that date. Persons using plaintiff's golf driving range facilities after said date were subject to the tax levied by said ordinance and it has since been and is now the duty of the plaintiff to collect said tax from all those using the facilities and to remit it to the city of Mayfield Heights."

The appeals from this judgment are on questions of law. The respective parties each ask for a reversal of that part of the judgment which is adverse to it or him.

1. The right of municipalities in this state to legislate for the levying of excise taxes of the character of the municipal legislation now before us cannot be here questioned. The state of Ohio has not pre-empted the field, nor limited expressly, or by implication, the right of municipalities to launch into this field of taxation.

On this subject it is said:

"1. Taxation is an attribute and function of sovereignty.

"* * *

"3. Municipalities have the power to levy excise taxes to raise revenue for purely local purposes; but under **Section 13, Article XVIII, Ohio Constitution,** such power may be limited by express statutory provision or by implication flowing from state legislation which pre-empts the field by levying the same or a similar excise tax."

**Haefner, a taxpayer, et al., v. City of Youngstown, et al, 147 Oh St 58.**

As heretofore stated, the state has departed from this field of taxation, and the municipalities within the state are now free to function within constitutional limitations without state interference.

2. The city of Mayfield Heights, in its status as an appellant, claims error of the trial court in ruling that ordinance No. 1320 (the one initially enacted) did not, by its terms, apply to the plaintiff's "golf driving range business."

At the outset, it must be observed that we are here dealing with a tax law, and, as such, it must be strictly construed. If there is any doubt as to whether a particular ordinance levies a tax, the doubt must be resolved in favor of the taxpayer.

Marshall, C. J., in **Cassidy v. Ellerhorst, 110 Oh St 535,** at **p. 539,** has well stated the rule:

"In approaching the interpretation of statutes imposing taxes, it should be recognized at the outset that the rule of strict construction should be followed, and that, where there is ambiguity or doubt as to legislative intent, the doubt should be resolved in favor of the person upon whom the burden of taxation is sought to be imposed, and that language employed in a taxation statute should not be extended by implication beyond its clear import, or to enlarge its operation so as to

embrace subjects of taxation not specifically named. This rule has been declared by this court in Gray v. City of Toledo, 80 Oh St 445, 448, 89 N. E. 12, and City of Cincinnati v. Connor, 55 Oh St 82, 91, 44 N. E. 582; and by the Supreme Court of the United States in Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211."

Another rule of law relating to the interpretation of statutes or ordinances may be stated succinctly as follows:

"Special statutory provision for particular cases operate as exceptions to general provisions which might otherwise include the particular cases and such cases are governed by the special provisions."

State, ex rel. Elliot Co., v. Connar, Supt, 123 Oh St 310.

Under the first ordinance (No. 1320), the municipal council not only levied an excise tax on the admission charged to enter any place for the purpose of seeing, hearing, or otherwise enjoying the facilities of the place (the theatre, opera, museum, etc.), but also included as a part of the admission charge additional expenditures required to be made for the use of certain parts of the facilities or accommodations of the "place." This the council did by its own definition of the "words and phrases" used in the ordinance. The council legislated that, included in the "admission charge," there should be "a charge made for rental or use of facilities for purposes of recreation or amusement."

It would appear that the rental fees charged for the golf balls and the use of the driving course to accomplish the purpose of renting the balls, could properly be termed an "admission charge," unless other language in the ordinance requires a different interpretation, even though the word "place," standing alone, is one of broad and uncertain meaning.

The legislating body, however, undertook to define and limit its meaning of the word "place." It will be remembered that the legislation undertook to levy a tax on every person who pays an admission charge "to any place." In its definition of "place," a golf driving range was not included. In fact, there was no affirmative words which levied a tax on a charge made for the use of such a range, nor for the rental of balls as a part thereof.

As stated above, general provisions such as "equipment or facilities for purposes of recreation," when used in an ordinance, must give way to special provisions for particular cases; and we reach the conclusion that, under the original ordinance, a rental charge made for golf balls to be driven on the range was not subject to the admissions tax, "not on the theory that the * * * (city council did not) have the power to impose a tax * * *, but because it" did not do so. Board of Park Commissioners, etc., v. Evatt, Tax Commr., 145 Oh St 297, at p. 300. Compare: City of East Cleveland v. Evatt, Tax Commr., 145 Oh St 493.

We find no error in the trial court's judgment on this phase of the case.

Directing attention now to the ruling of the trial court, in respect to the application of the amended ordinance wherein "golf driving ranges" were specifically included in its definition of "places."

The public, of course, was admitted to the 15-acre area without

charge. No tax could be collected at this point. The driving course was located in a definite part of the enclosure. The public could watch the golf enthusiasts if it wished, or could wander about and enjoy the restaurant. But those who wanted to use the golf driving range, through the rental of a bucket of balls, and to enjoy these facilities of the place, could be taxed. The taxing authorities could, and did, make the charge for the balls to be used on the range an admission charge and subject to tax.

Contrary to the claim that the tax can be imposed only upon charges for admission to places where the person admitted is a spectator or auditor, such as at theatres, operas, public performances, ball games, athletic contests, and other places of amusements we are of the opinion that the amended ordinance could, and properly did, impose a tax on fees or rentals charged for the use of golf balls to be used on the facilities of the 15-acre "place"; and whether such charge may be said to be a charge in the nature of a rental or use, nevertheless it may also be characterized as an admission charge and made subject to tax.

We find no error in the record before us, and the judgment will be affirmed.

Judgment affirmed in each case.

HUNSICKER, PJ, HORNBECK, J, concur.