REGAL CINEMAS, INC., Appellant,

v.

CITY OF MAYFIELD HEIGHTS et al., Appellees.

[Cite as *Regal Cinemas, Inc. v. Mayfield Hts.* (2000), 137 Ohio App.3d 61.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75962.

Decided March 20, 2000.

*Vorys, Sater, Seymour and Pease, L.L.P., John Winship Read* and *Lisa Babish Forbes;* and *Barry J. London,* for appellant.

*Calfee, Halter & Griswold, L.L.P.,* and *Phillip J. Campanella,* for appellees city of Mayfield Hts., city of Middleburg Hts., city of Solon and their respective officials.

*Roetzel & Andress, David R. Harbarger* and *Breaden M. Douthette,* for appellee city of Westlake.

---

PORTER, Judge.

Plaintiff-appellant, Regal Cinemas, Inc., appeals from the trial court's declaratory judgment in favor of defendant-appellees the cities of Mayfield Heights, Middleburg Heights, Solon, Westlake and their respective municipal officials, which held that admissions taxes imposed by the cities were not unconstitutional as applied to Regal's motion picture patrons. Regal contends that the admissions taxes impermissibly encroach on its First Amendment rights of free speech and that the trial court erred to its prejudice in applying intermediate rather than strict scrutiny to its analysis of the admissions taxes, in placing the burden of proof on Regal in determining key issues, and in refusing to address Regal's request for a refund of the admissions taxes paid. We find no error and affirm.

The admissions taxes at issue were adopted by ordinances in the respective cities some forty-five to fifty years ago, between 1947 and 1953. The taxes levied by each of the cities are similar in character and intent. Each imposes a tax (three percent or five percent) on amounts paid by patrons for admission to certain recreational facilities within the respective cities. Examples of the facilities affected include theaters, dance halls, bowling alleys, ice and roller skating rinks, golf courses, carnivals, concert venues and outdoor amusement parks.

Each ordinance provides for the tax to be paid by the patron and collected by the vendor and remitted monthly to the appropriate city. If the vendor responsible fails to collect or remit the tax, that vendor "shall nevertheless be personally liable to the City for the amount of such tax." If a vendor does not pay the taxes to the respective cities so entitled, it may be convicted of a misdemeanor and fined or have its principals subject to incarceration.

Regal owns and operates several theaters in the greater Cleveland marketing area, beginning in the early to mid 1990s, including multiscreen, first-run theaters in each of the cities. These theaters have a seating capacity ranging from 1,849 to 3,340. The average number of patrons admitted to these theaters each month

ranges from 36,358 to 48,841. From 1991 to 1996, Regal expanded from eight screens to forty-nine screens in northeast Ohio.

The admission price paid by the patrons of the four theaters involved in this litigation varies between $4.50 and $6.75 per ticket, depending upon the time of day and type of customer. Regal bases its prices on a number of competitive factors, including the prices charged by other theaters, and other types of entertainment. Regal claimed that it is unable to add the admissions tax onto its otherwise stated admission prices and maintain competitive levels. Consequently, Regal contends that it pays the admissions taxes to each of the cities out of its general operating revenues rather than charging its customers for the tax directly as the ordinances permit.

Between 1996 and 1998, Regal has paid between eighty-eight percent and one hundred percent of the admissions taxes collected by the four cities. Since at least April 1998, Regal has paid these admissions taxes under protest.

The cities deposit the proceeds from the admissions taxes into their respective general revenue funds. The general funds of the cities provide the revenues primarily for general-purpose public-safety activities, including police, fire, ambulance services, rubbish disposal, and street maintenance available to all residents and businesses in the communities.

Regal initially filed a complaint for declaratory judgment, a motion for a temporary restraining order and a motion for a preliminary injunction on May 8, 1998 against Mayfield Heights and Solon and their respective mayors and finance directors. The suit contended that the admissions taxes imposed by these cities impermissibly infringe Regal's free speech rights guaranteed by the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution. The trial court entered a temporary restraining order that same day enjoining further enforcement and collection of the taxes from Regal. Regal filed an amended complaint on May 14, 1998, adding Middleburg Heights and Westlake and their respective mayors and finance directors as defendants. Following a hearing on June 1, 1998, the trial court overruled and dismissed Regal's application for preliminary injunction against the enforcement and collection of the admissions taxes by all defendants.

After all defendants had answered and all parties had conducted discovery, the respective parties filed cross-motions for summary judgment on September 1, 1998. The parties also filed a stipulation of facts that same day. Opposition briefs and one reply brief were filed. All of the motions for summary judgment were denied.

A bench trial commenced October 20, 1998 and concluded the following day. At the conclusion of all evidence, the parties waived closing arguments and filed

posttrial briefs on November 30, 1998. Subsequently, on January 5, 1999, the trial court issued an eight-page opinion, finding that Regal had standing to challenge the admissions taxes but concluding that there had been no constitutional violations, and entered judgment in favor of the cities. This timely appeal ensued.

We will address Regal's assignments of error in the order asserted and together where it is appropriate for discussion.

"I. The trial court committed prejudicial error by applying intermediate rather than strict scrutiny to analyze the admissions taxes.

"II. The trial court committed prejudicial error in its application of intermediate scrutiny."

■■■ In Ohio, when reviewing the constitutionality of legislation, the courts must presume the statutes to be constitutional. *Hughes v. Ohio Bur. of Motor Vehicles* (1997), 79 Ohio St.3d 305, 307, 681 N.E.2d 430, 432, citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59. This presumption can only be overcome when it appears beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 47, 554 N.E.2d 97, 98–99, citing *Dickman, supra,* at paragraph one of the syllabus. The court must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional. *Hughes, supra,* at 307, 681 N.E.2d at 432; *State v. Dorso* (1983), 4 Ohio St.3d 60, 4 OBR 150, 446 N.E.2d 449. As stated by the Ohio Supreme Court in *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38, 616 N.E.2d 163, 166:

"In determining the constitutionality of an ordinance, we are mindful of the fundamental principle requiring courts to presume the constitutionality of lawfully enacted legislation. Further, the legislation being challenged will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt." (Citations omitted.)

■■ The right of Ohio municipalities to levy admission taxes has long been recognized. *Estelle Realty, Inc. v. Mayfield Hts.* (1964), 176 Ohio St. 367, 27 O.O.2d 344, 199 N.E.2d 875; *Smack & Snack, Inc. v. Mayfield Hts.* (1958), 107 Ohio App. 141, 149 N.E.2d 253; *Aurora v. Sea Lakes, Inc.* (1995), 105 Ohio App.3d 60, 663 N.E.2d 690; *Natl. Amusements, Inc. v. Springdale* (May 10, 1989), Hamilton App. Nos. C–870627 and C–870634, unreported, 1989 WL 49133; *Fairlawn v. Ted Bare Enterprises, Inc.* (Sept. 7, 1988), Summit App. No. 13465, unreported, 1988 WL 93217. Regal argues, however, that because the display of motion pictures includes the exercise of free speech, the application of the cities'

ordinances is subject to strict First Amendment scrutiny rather than intermediate scrutiny. We do not agree.

■ The First Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, prohibits the enactment of any law "abridging the freedom of speech." The First Amendment protects motion pictures as fully as other means of expression. *State ex rel. Eckstein v. Video Express* (1997), 119 Ohio App.3d 261, 273, 695 N.E.2d 38, 46–47, citing *Joseph Burstyn, Inc. v. Wilson* (1952), 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098.

■ As noted by the Sixth Circuit:

"It is well settled that a law restricting speech on the basis of content is subject to strict scrutiny, which requires that the law be necessary to serve a compelling state interest and narrowly tailored to achieve that end. It is an equally familiar principle that a law neutral with respect to content is subject to intermediate scrutiny, which is satisfied where the law furthers an important governmental interest without burdening substantially more speech than necessary." *Michigan State AFL–CIO v. Miller* (C.A.6, 1997), 103 F.3d 1240, 1250.

Other leading authorities support the distinction between strict and intermediate scrutiny in content-based or content-neutral cases. See *Turner Broadcasting System, Inc. v. Fed. Communications Comm.* (1994), 512 U.S. 622, 642, 114 S.Ct. 2445, 2459, 129 L.Ed.2d 497, 517–518; *DiMa Corp. v. Hallie* (C.A.7, 1999), 185 F.3d 823, 826–827; *Horton v. Houston, Texas* (C.A.5, 1999), 179 F.3d 188, 192–193; *Phillips v. Keyport* (C.A.3, 1997), 107 F.3d 164, 172; *Seven Hills v. Aryan Nations* (1996), 76 Ohio St.3d 304, 306, 667 N.E.2d 942, 946; *United Elec. Radio & Mach. v. State Emp. Relations Bd.* (1998), 126 Ohio App.3d 345, 350, 710 N.E.2d 358, 361–362.

■ The United States Supreme Court has observed that "[d]eciding whether a particular regulation is content based or content neutral is not always a simple task." *Turner Broadcasting, supra,* 512 U.S. at 642, 114 S.Ct. at 2459, 129 L.Ed.2d at 517. Regulations that "by their terms distinguish favored speech from disfavored speech or views expressed are content based." *Id.* at 643, 114 S.Ct. at 2459, 129 L.Ed.2d at 518. On the other hand, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661, 675.

■ The intermediate level of scrutiny does not apply to content-based restrictions. *Turner Broadcasting, supra.* The "principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech

'without reference to the content of the regulated speech.' " *Madsen v. Women's Health Ctr., Inc.* (1994), 512 U.S. 753, 763, 114 S.Ct. 2516, 2523, 129 L.Ed.2d 593, 606, quoting *Ward,* 491 U.S. at 791, 109 S.Ct. at 2753, 105 L.Ed.2d at 675; *Seven Hills, supra.* Furthermore, government regulations that apply evenhandedly to all speakers weigh in favor of finding content neutrality. *Horton, supra.*

We agree with the trial court's findings that the cities' admissions taxes are content neutral and therefore, subject to intermediate, not strict, scrutiny. There is nothing in the language of the relevant ordinances that refers to content of films shown. There is nothing in the history of the adoption of these ordinances, nor was there any evidence at trial, that the cities have attempted to or threatened to affect in any fashion the content of the films Regal shows. In short, there exists no evidence of legislative intent to suppress or restrict Regal's right of free speech. We acknowledge the fact that Regal pays most, if not all, of the admissions taxes received by the cities. However, this is not because the taxes are focused on the movie theaters, but simply because market forces have reduced many of the other taxable activities. Accordingly, Regal was entitled to intermediate scrutiny of the ordinances' effect, as the trial court gave it.

Regal's reliance on *Minneapolis Star Tribune Co. v. Minnesota Commr. of Revenue* (1983), 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295, in arguing for "strict scrutiny," is misplaced. In *Minneapolis Star,* a special ink and paper use tax was imposed by the Minnesota legislature. The tax at issue was "without parallel in the State's tax scheme." *Id.* at 582, 103 S.Ct. at 1366, 75 L.Ed.2d at 303. The tax targeted specific publishers in the publishing business and exempted smaller print organizations. The Supreme Court found the tax violative of the First Amendment, not only because it singled out the press, but also because it targeted the largest newspapers and exempted the smaller publishers. The tax was in fact content based, which resulted in the court's use of a strict standard of review.

In *Leathers v. Medlock* (1991), 499 U.S. 439, 448, 111 S.Ct. 1438, 1444, 113 L.Ed.2d 494, 505, the United States Supreme Court explained that strict scrutiny is warranted when a content-based regulation threatens to "distort the market for ideas." In *Turner Broadcasting,* 512 U.S. at 660, 114 S.Ct. at 2468, 129 L.Ed.2d at 529, the court further expressed that heightened scrutiny should be applied only when the regulation was "structured in a manner that raised suspicions that their objective was, in fact, the suppression of certain ideas."

In the instant case, the cities' admissions taxes are content neutral and are applicable to numerous activities where patrons are subject to the tax, including theaters, athletic activities, golf courses, dance halls, circuses and amusements parks. The tax applies to all theater patrons regardless of film content and the tax does not prohibit or restrict in any fashion the display of motion pictures.

See *Associated Film Distrib. Corp. v. Thornburgh* (C.A.3, 1986), 800 F.2d 369 (strict scrutiny not an appropriate standard of review when regulation of movie industry in Pennsylvania did not infringe upon movie-making activities, as did the state tax upon ink and paper in *Minneapolis Star*). We find no evidence that the admissions taxes in question threaten to "distort the market for ideas" or raise "suspicions that their object was, in fact, the suppression of certain ideas." Therefore, we agree with the trial court that intermediate scrutiny was the proper test to be applied to the admissions taxes at issue here.

■ Regal also argues that the trial court improperly applied the intermediate scrutiny test. We find no merit in this contention. In *United States v. O'Brien* (1968), 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, the Court set forth the intermediate scrutiny test. Under *O'Brien,* a content-neutral regulation will be sustained if it meets the following three requirements: (1) the regulation furthers an important or substantial government interest; (2) the government interest is unrelated to the suppression of free expression; and (3) the incidental restriction of alleged first amendment freedoms is no greater than necessary to further that interest. *Id.* at 377, 88 S.Ct. at 1679, 20 L.Ed.2d at 680, quoted and followed in *Turner Broadcasting, supra,* 512 U.S. at 662, 114 S.Ct. at 2469, 129 L.Ed.2d at 530.

■ The cities' admissions taxes further an important government interest as they raise valuable revenue for traffic, crowd control, and security at venues that attract a large number of people in a congested area at the same time. Such taxes also further the important government interest of preserving peace and order within the cities. It is undisputed that raising revenue is a substantial concern for the respective cities. There was also significant evidence that Regal's theaters placed additional demands upon the cities. Lt. Joseph Connelly of the Mayfield Heights Police Department testified that when Regal Cinema had large crowds, the police officers patrolling the area were instructed to give it "special attention." Lt. Connelly testified that the specific hours and length of movies at a movie theater create an ideal opportunity for crime, as cars and trucks are left unattended in the lot during those times with little traffic in the lot.

Capt. Guy Turner of the Westlake Police Department testified that assembly-type uses where a large group of young people gather require more police attention because "young people tend to be more involved in crime, both as suspects and as victims." He also testified that automobile theft is one of the most frequent crimes in Westlake and that there are a large number of automobiles left unattended for extended periods of time while their owners are attending a movie. Such areas with unattended automobiles and groups of young people "are places that we want to hit harder in terms of patrol." Sgt. Robert A. Frollo of the Middleburg Heights Police Department similarly testified that the

operation of the Regal Cinema in the city requires a greater police response than other businesses located there.

Wayne F. Doberstyn, Solon Assistant Chief of Police, testified that "about half a million" people per year are drawn to the Regal Cinema in Solon requiring special attention from the police department. He testified that, due to the "atrocious" weekend night traffic, an additional access road had to be built in order to get emergency equipment back to Regal Cinema if needed. Doberstyn testified that a large amount of juveniles congregate in the parking lot and the department receives many calls of "juveniles loitering, fights breaking out, assaults," and some gang activity. In fact, in the summer of 1996, as a result of the juvenile problem, the city was forced to bring in approximately half of its police force on two or three consecutive Friday nights to "show a police presence in the area and to discourage this kind of behavior." When asked if any other business in Solon creates the special safety problems or burdens with juveniles meeting as Regal Cinema, Asst. Chief Doberstyn answered, "Not even close, no." He also stated that no other business establishment in Solon has "the special problems and burdens created by a large influx of people at very specific and short periods of time, large obscured parking lots, juvenile congregation, night-time gridlock and large amounts of cash at night that would be analogous at all to the burdens that are placed upon our city and our city's safety forces as Regal."

Regal argues nevertheless that simply because businesses that attract large attendances cost the cities more money than other businesses, raising funds to cover those expenses "can be accomplished without burdening Regal's First Amendment freedoms." In short, Regal argues that the ordinances are not sufficiently tailored to pass constitutional muster, *i.e.*, the cities should impose the admissions tax or similar revenue generating taxes on all business so that they proportionately share the tax burden. We are not persuaded.

 This presents the interesting question of whether the regulation's alleged incidental restriction on free speech is greater than is essential to further the government's interests. However, to satisfy the *O'Brien* standard, a regulation need not be the least speech restrictive means of advancing the cities' interests. "Rather, the requirement of narrow tailoring is satisfied 'so long as the * * * regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward, supra,* 491 U.S. at 799, 109 S.Ct. at 2758, 105 L.Ed.2d at 680, quoting *United States v. Albertini* (1985), 472 U.S. 675, 689, 105 S.Ct. 2897, 2906–2907, 86 L.Ed.2d 536, 548–549.

Absent the admissions taxes, the cities would have less revenue to deal with the secondary effects of commercial entertainment at which the taxes are aimed. We find it is "within a legislature's legitimate purview to conclude that such secondary effects as late-night noise and traffic are likely to adhere to all commercial

entertainment." *Natl. Amusements, Inc. v. Dedham* (C.A.1, 1995), 43 F.3d 731, 744. Even though it is undisputed that Regal pays a significant amount of the admissions taxes collected by the cities, such taxes were never imposed on Regal. They were imposed on Regal's patrons, who pay the admission charge to enter its facilities. Furthermore, we find that the taxes are directly related to Regal's significant safety and traffic requirements. Several police officers from the cities testified that the large crowds and numbers of automobiles generated by Regal increase the special traffic and safety burdens on the cities beyond ordinary business or commercial activities. Accordingly, we find that the cities' interest in generating revenue for such "special attention" would be achieved less effectively absent the admissions taxes.

Furthermore, it must be recognized that there is no incidental effect on Regal's alleged free speech rights. There is no evidence that any city has used the admissions taxes to influence film content and the ordinances on their face are obviously content neutral. We do not understand that Regal is arguing that a three-percent or five-percent tax on ticket sales forecloses cinematic expression or any other means of expression guaranteed by the First Amendment. See, *e.g., One World One Family Now v. Honolulu* (C.A.9, 1996), 76 F.3d 1009, 1013. Regal's own stipulations refute any suggestion that its freedom of expression has been harmed by the ordinances. The evidence reflected that Regal has grown its business six times over in the number of screens displayed in less than seven years despite the admissions taxes.

Assignments of Error I and II are overruled.

"III. The trial court committed prejudicial error in requiring regal to prove that the admissions taxes are facially invalid and were intended to infringe Regal's free speech rights."

Regal argues that Part II(F) of the trial court's opinion indicates that the court did not conduct an "as applied" analysis to its constitutional claims. We do not agree.

An ordinance may be facially unconstitutional in one of two ways: "either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad." *Members of City Council v. Taxpayers for Vincent* (1984), 466 U.S. 789, 796, 104 S.Ct. 2118, 2124, 80 L.Ed.2d 772, 781. A successful challenge to the facial constitutionality of a law invalidates the law itself.

An as-applied challenge contends that the law is unconstitutional "as applied" to the litigant's particular speech activity, even though the law may be capable of valid application to others. *Id.* at 803, 104 S.Ct. at 2127–2128, 80 L.Ed.2d at 785–786. An as-applied challenge does not implicate the enforcement

of a law against third parties. Contrary to a facial challenge, a successful "as applied" challenge does not render the law itself invalid but only the particular application of the law.

Based on the record before us, we find that Regal correctly contends that its claims are "as applied" challenges to the admission taxes. Regal is asserting that the admissions taxes imposed by the cities impermissibly infringe on its free speech rights guaranteed by the First Amendment. Nowhere does Regal assert that the taxes are unconstitutional as they are applied to other facilities subject to the tax. However, when the regulation at issue is content neutral, as here, the court must apply the same *O'Brien* test regardless of whether Regal has brought a facial challenge or an "as applied" challenge to the regulation.

We find that the trial court's conclusions were appropriate and in accordance with the *O'Brien* requirements. Having already found that the trial court correctly concluded, pursuant to *O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 that the admissions taxes furthered an important government interest and produced no incidental effect on Regal's alleged free speech rights, Regal's claim fails regardless of whether it was a facial or "as applied" challenge.

Assignment of Error III is overruled.

"IV. The trial court committed prejudicial error when it required regal to prove beyond a reasonable doubt that the admissions taxes are unconstitutional."

In this assignment of error, Regal asserts that the trial court erred in requiring it to prove beyond a reasonable doubt that the admissions taxes are incompatible with the United States Constitution. We do not agree.

It is well established in Ohio that " '[a]ll legislative enactments enjoy a presumption of constitutionality,' and 'the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional.' " *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1996), 77 Ohio St.3d 338, 345–346, 673 N.E.2d 1351, 1357, quoting *Dorso, supra,* 4 Ohio St.3d at 61, 4 OBR at 151, 446 N.E.2d at 450. Furthermore, this presumption can only be overcome by proof beyond a reasonable doubt that the legislation and the Constitution are clearly incompatible. *Doyle, supra.*

We find that the trial court correctly found that Regal failed to meet its burden of proof that the cities' admissions taxes unconstitutionally infringed upon its right to exercise free speech. As discussed fully above, the cities' admissions taxes were supported by an important government interest unrelated to the suppression of free expression and they did not unnecessarily restrict Regal's

alleged free speech rights. Under any standard of proof, the trial court's findings were supported by the record. Furthermore, this court "is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306; *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742.

Assignment of Error IV is overruled.

"V. The trial court committed prejudicial error when it refused to address Regal's request for a refund of admissions taxes paid."

Given our disposition of the previous assignments of error, this assignment of error is moot and will not be addressed. App.R. 12(A)(1)(c).

*Judgment affirmed.*

ROCCO, P.J., and MICHAEL J. CORRIGAN, J., concur.