[Cite as *State v. Mallis*, 196 Ohio App.3d 640, 2011-Ohio-4752.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THE STATE OF OHIO, | ) | CASE NO. 10 MA 51 |
| | ) | |
| APPELLEE, | ) | |
| | ) | |
| V. | ) | OPINION |
| | ) | |
| MALLIS, | ) | |
| | ) | |
| APPELLANT. | | |

CHARACTER OF PROCEEDINGS:       Criminal Appeal from the Youngstown
Municipal Court of Mahoning County,
Ohio
Case No. 09 CRB 2005

JUDGMENT:       Vacated.  Charges Dismissed.

APPEARANCES:

For Plaintiff-Appellee:       Joseph Macejko,
Youngstown City Prosecuting Attorney,
and
John H. Marsh Jr.,
Assistant Prosecuting Attorney, for
appellee.

For Defendant-Appellant:       Whalen Duffrin, L.L.C., and
Robert Duffrin, for
appellant.

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated:  September 15, 2011

WAITE, Presiding Judge.

{¶ 1} Appellant, Cheryl Mallis, appeals the judgment of the Youngstown Municipal Court convicting her on one count of failure to confine a vicious dog and one count of failure to confine a dog. Appellant was originally charged with two counts of violating the vicious-dog statute, R.C. 955.22(D)(1), and she moved to have those charges dismissed prior to trial. The motion was overruled, and appellant is now challenging that ruling on appeal. Appellant contends that the Ohio Supreme Court ruled in 2004 that R.C. 955.22(D)(1) is unconstitutional on its face. *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846. The statute has not been amended or modified since that time. Appellant was charged under the same section of the vicious-dog statute, using the same definitions of "vicious dog" that were held unconstitutional in *Cowan*. Thus, the motion to dismiss should have been granted. Appellant's second assignment of error regarding the sufficiency of the evidence is moot. For the following reasons, the judgment of the trial court is vacated, and the two criminal charges are hereby dismissed.

{¶ 2} Raymond and Holly Henry were walking their dog, a large German shepherd and Labrador retriever mix, along the sidewalk on Euclid Boulevard on July 5, 2009. Mrs. Henry was pushing her son's baby stroller, while Mr. Henry and their dog, which was on a retractable leash, walked behind her. The Henrys arrived at appellant's property, located at 4234 Euclid Boulevard. Appellant's front yard did not have any type of tangible physical fence, but it was later established that there was a

type of invisible electrical fence in the yard. The Henrys' dog stepped into appellant's yard, and it is claimed that it was immediately attacked by appellant's two dogs. Mr. Henry was slightly injured in the altercation.

{¶ 3} On August 17, 2009, Deputy Dog Warden Sean Toohey filed two criminal complaints against appellant, alleging that she had failed to properly confine vicious dogs, pursuant to R.C. 955.22(D)(1). Appellant was specifically charted with a violation of the state statute, not a local city ordinance.

{¶ 4} On December 21, 2009, appellant filed a motion to dismiss the complaints on the grounds that they violated her right of due process and that the criminal statute had previously been declared unconstitutional in *Cowan*. The trial court overruled the motion on January 29, 2010. Appellant renewed the motion at trial, and it was again overruled.

{¶ 5} The case proceeded to a bench trial on February 25, 2010. Sean Toohey, the city's deputy dog warden, testified that he had a conversation with appellant at her residence in May 2009. He observed the dogs and their responses to the invisible fence at that time. He stated that the dogs "didn't mess with [him]" or the other people who walked by the yard. He did not classify the dogs as vicious at that time. He testified that he informed Officer Barbara Copeland, who investigated the incident involving the Henrys' dog, that he did not think that appellant's dogs were vicious.

{¶ 6} Fred Cailor, one of appellant's neighbors, testified that appellant's dogs had interacted with his dog, also a lab mix, without any problems for the previous year and a half and that they were not vicious.

{¶ 7} Testimony at hearing established that on July 5, 2009, the Henrys were walking their dog on a leash on Euclid Boulevard. As they passed appellant's house, their dog walked onto appellant's lawn. There was no visible fence on the property. Appellant had installed an underground electric invisible fence to restrain her dogs. Despite the electric invisible fence, appellant's two dogs ran to the sidewalk and began fighting with the Henrys' dog. There is no indication in the record what type of dogs appellant owned other than that they were not of the breed commonly referred to as pit bulls. Mr. Henry hit the larger of the two dogs with his plastic retractable leash in order to free his own dog. He also kicked one of the dogs. When he got home, Mr. Henry noticed a little bit of blood on his leg. He testified that he had sustained a bite and a scratch that did not require medical attention. Mr. Henry had no recollection of sustaining the injuries during the dog's altercation at appellant's home.

{¶ 8} The trial court filed a journal entry of conviction on February 25, 2010. Appellant was originally charged with two counts of failure to confine a vicious dog under R.C. 955.22(D)(1). The trial court found that only one of the dogs had injured Mr. Henry and that the other dog was not vicious. The trial court convicted appellant of one count of failure to confine a vicious dog under R.C. 955.22(D) and one count of the lesser included offense of failure to confine a dog under R.C. 955.22(C). The

violation of R.C. 955.22(D) subjected appellant to a possible jail term of not more than 180 days. The R.C. 955.22(C) violation subjected appellant to a fine of not less than $25 dollars or more than $100 on a first offense.

{¶ 9} The sentencing judgment entry was filed on March 25, 2010. The trial court did not impose a jail sentence or a fine. Appellant was ordered to pay court costs and restitution in the amount of $417 to the Henrys and to reimburse costs of community-control supervision in the amount of $100. Appellant was placed on basic probation supervision for one year. Appellant filed this appeal on March 26, 2010. Appellant's sentence was suspended pending this appeal.

Assignment of Error Number One

{¶ 10} "The trial court erred by overruling the defendant's motion to dismiss based on a denial of procedural due process."

{¶ 11} Appellant filed a motion with the trial court to dismiss the two vicious-dog charges on the grounds that the vicious-dog statute, R.C. 955.22(D)(1), had been declared unconstitutional on its face in *State v. Cowan*. Appellant argued that under the holding of *Cowan*, the statute was unconstitutional on its face because it violated the right of due process. Appellant seeks to have us correct the error of the trial court by granting the motion to dismiss. We have previously held that a trial court's denial of a motion to dismiss in a criminal case is reviewed de novo on appeal. *State v. Woodbridge*, 153 Ohio App.3d 121, 2003-Ohio-2931, 791 N.E.2d 1035, ¶11. We are persuaded by appellant's argument that *Cowan* applies in this case and that the criminal charges should have been dismissed.

{¶ 12} The vicious-dog statute, R.C. 955.22(D), reads as follows:

{¶ 13} "(D) Except when a dangerous or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following:

{¶ 14} "(1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained;

{¶ 15} "(2) While that dog is off the premises of the owner, keeper, or harborer, keep that dog on a chain-link leash or tether that is not more than six feet in length and additionally do at least one of the following:

{¶ 16} "(a) Keep that dog in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top;

{¶ 17} "(b) Have the leash or tether controlled by a person who is of suitable age and discretion or securely attach, tie, or affix the leash or tether to the ground or a stationary object or fixture so that the dog is adequately restrained and station such a person in close enough proximity to that dog so as to prevent it from causing injury to any person;

{¶ 18} "(c) Muzzle that dog."

{¶ 19} R.C. 955.11(A)(4)(a) contains three definitions for the term "vicious dog." First, a "vicious dog" is a dog that without provocation "[h]as killed or caused

serious injury to any person." R.C. 955.11(A)(4)(a)(i). Second, a "vicious dog" is a dog that without provocation "[h]as caused injury, other than killing or serious injury, to any person, or has killed another dog." R.C. 955.11(A)(4)(a)(ii). A third definition, found in R.C. 955.11(A)(4)(a)(iii), defines "vicious dog" as a dog that "[b]elongs to a breed that is commonly known as a pit bull."

{¶ 20} In *Cowan*, the dog warden, in response to a neighbor's complaint about Cowan's dogs, classified her dogs as vicious and informed her that her dogs would be considered "vicious dogs" under the state statutes. As a consequence, R.C. 955.22 placed restrictions and requirements on Cowan and her dogs, such as purchasing liability insurance (R.C. 955.22(E)) and securing the dogs in a locked pen or locked fenced yard or with a leash or tether (R.C. 955.22(D)). After this incident, the dog warden went to Cowan's home on two more occasions and found that the dogs were not being confined pursuant to the requirements of the vicious-dog statute. She was then charged with failing to confine a vicious dog, failure to confine a dangerous dog, and failure to maintain proper insurance for a vicious dog. After a jury trial, she was convicted on all charges. She appealed to the Eleventh District Court of Appeals, and the convictions were reversed. The judgment of the court of appeals was subsequently affirmed by the Ohio Supreme Court. The *Cowan* court wrote:

{¶ 21} "Once the dog warden made the unilateral decision to classify appellee's dogs as vicious, R.C. 955.22 was put into effect and restrictions were placed upon appellee and her dogs. No safeguards, such as a right to appeal or an

administrative hearing, were triggered by this determination to challenge the viciousness label or its ramifications. In fact, it was not until appellee was formally charged as a criminal defendant that she could conceivably challenge the viciousness designation under R.C. 955.22. We find it inherently unfair that a dog owner must defy the statutory regulations and become a criminal defendant, thereby risking going to jail and losing her property, in order to challenge a dog warden's unilateral decision to classify her property. The statute does not provide appellee a right to be heard in a meaningful time and in a meaningful manner on the issue of whether her dogs were vicious or dangerous. Accordingly, we find that R.C. 955.22 violates procedural due process insofar as it fails to provide dog owners a meaningful opportunity to be heard on the issue of whether a dog is 'vicious' or 'dangerous' as defined in R.C. 955.11(A)(1)(a) and (A)(4)(a)." Id. at ¶13.

{¶ 22} Three years after the *Cowan* decision, the Ohio Supreme Court clarified that the *Cowan* holding does not apply when the dog is defined as vicious because it belongs to the breed of dogs known as pit bulls. *Toledo v. Tellings*, 114 Ohio St.3d 278, 2007-Ohio-3724, 871 N.E.2d 1152, ¶32. Pit bulls are classified as vicious pursuant to R.C. 955.11(A)(4)(a)(iii). This instant appeal does not involve any allegation that appellant's dog was a pit bull, and therefore *Toledo v. Tellings* is not applicable and *Cowan* contains the relevant law to determine the outcome of this appeal.

{¶ 23} Appellee argues that *Cowan* declared R.C. 955.22 unconstitutional only as applied under the facts of the case. Appellee is incorrect in this assertion. A

statute or ordinance is invalid on its face when it is "unconstitutional in every conceivable application" or when "it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.' " *Members of Los Angeles City Council v. Taxpayers for Vincent* (1984), 466 U.S. 789, 796, 104 S.Ct. 2118. By contrast, an "as applied" challenge "contends that [a statute or ordinance] is unconstitutional 'as applied' to the litigant's particular speech [or other] activity, even though the [statute or ordinance] may be capable of valid application to others." *Regal Cinemas, Inc. v. Mayfield Hts.* (2000), 137 Ohio App.3d 61, 72. The *Cowan* court invalidated R.C. 955.22 both on its face and as applied. *Cowan* at ¶13-14. See, e.g., 2008 Ohio Atty.Gen.Ops. No. 2008-006: "In *Cowan* the Ohio Supreme Court held that R.C. 955.22(D)-(F) on their face violate the constitutional right to procedural due process * * *." The constitutional error in R.C. 955.22(D) has rendered it void ab initio and it cannot be revived or reinstated except by further legislative action. Id.; see also *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 80, 495 N.E.2d 380.

{¶ 24} The facts of the instant case reiterate why R.C. 955.22(D)(1) was determined to be unconstitutional in *Cowan*. R.C. 955.22(D)(1) is not a dog-bite statute, in the sense that liability is based on whether or not a dog bites or has bitten a victim. R.C. 955.22(D)(1) is a dog-confinement statute. It requires that vicious dogs be kept in a special locked pen or behind a locked fence. In *Cowan*, the dog warden had at least informed Cowan beforehand that her dog was being labeled as vicious before prosecuting her for failing to properly restrain or cage a vicious dog. In

the instant case, the deputy dog warden examined appellant's dogs and specifically declined to designate them as vicious dogs. There is no indication that appellant could obtain some type of verification from the dog warden that her dogs were not vicious, or attempt to prove in a judicial or administrative setting that they were not vicious before being subjected to criminal penalties for failing to abide by the additional burdens found in the vicious-dog statute. Appellant first discovered that her dogs were classified as vicious when criminal charges were filed. In fact, according to his own testimony, the deputy dog warden did not believe that appellant's dogs as vicious or classify them as vicious, yet he filed two criminal complaints alleging violations of the vicious-dog statute. The deputy dog warden admitted at trial that he did not investigate the incident that occurred on July 5, 2009, and that he informed the investigating officer that he did not think the dogs were vicious. It is unclear from the record why he filed the complaints as the complaining witness if he did not believe that the dogs were vicious.

{¶ 25} There was considerable discussion and confusion during the trial court proceedings as to relevance of the *Cowan* holding in light of the more recent Ohio Supreme Court case of *Youngstown v. Traylor*, 123 Ohio St.3d 132, 2009-Ohio-4184, 914 N.E.2d 1026. *Traylor* involved a violation of a Youngstown municipal dog ordinance that required vicious dogs to be properly restrained at all times. The ordinance defined a "vicious dog" as any dog with the propensity to cause injury to a human being or other domestic animal, or any dog that attacks a human being or another domestic animal without provocation. *Traylor* at ¶17.

{¶ 26} In an effort to distinguish the Youngstown municipal code section in *Traylor* from the unconstitutional state statute in *Cowan,* the Ohio Supreme Court concluded that the Youngstown ordinance, unlike the state statute, did not place any special burdens on the owners of vicious dogs, such as requiring the dog to be kept in specially locked cages, or requiring special insurance. Id. at ¶26. The Youngstown ordinance merely required the owners of vicious dogs, like the owners of any other type of dog, to keep the dog securely confined both on and off of the owner's property. Id. The *Traylor* court concluded that there was sufficient due process under the municipal ordinance because the prosecutor was required to prove at the criminal trial that a dog was vicious based on the dog's propensity to attack, and the dog owner could then provide evidence regarding the temperament and disposition of the dog in order to prove it was not vicious. Id. at ¶27. In short, the court in *Traylor* held that the Youngstown dog ordinance was significantly different from R.C. 955.22, and those differences allowed it to survive a constitutional due process challenge.

{¶ 27} The fact that *Traylor* upheld a local dog ordinance does not change the holding or the applicability of *Cowan* with respect to the constitutionality of the state vicious-dog statute. The instant appeal does not involve a municipal ordinance. It involves exactly the same vicious-dog statute that was overturned in *Cowan*. Furthermore, *Traylor* reiterated why R.C. 955.22 was unconstitutional: it permitted a unilateral and unreviewable determination by a state actor prior to the owner's being charged, it created prehearing burdens on dog owners, such as requiring liability

insurance for vicious dogs, and it failed to provide the owner a meaningful opportunity to challenge the vicious-dog designation (and the corresponding added statutory burdens placed upon owners of vicious dogs) prior to being charged with a crime. Id. at ¶26. Also, the later *Traylor* decision could not have somehow revived or reinstated a statute that was previously determined to be unconstitutional on its face in *Cowan*. See, e.g., *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. As stated above, only the state legislature can remedy a statute that is declared unconstitutional on its face.

{¶ 28} It is clear that R.C. 955.22(D) was declared unconstitutional on its face in *Cowan*. The statute has not been amended or modified since the *Cowan* decision. Thus, it continues to be unconstitutional. The trial court should have granted appellant's motion to dismiss the two charges alleging violations of R.C. 955.22(D)(1). We hereby sustain appellant's first assignment of error.

Assignment of Error Number Two

{¶ 29} "The weight of the evidence was insufficient to support the findings and verdict made by the court."

{¶ 30} Because we have concluded that R.C. 955.22(D) has been declared unconstitutional on its face by the Ohio Supreme Court in *Cowan*, it is therefore unnecessary for us to determine whether there was sufficient evidence to support a conviction under an unconstitutional statute. Accordingly, appellant's second assignment of error is moot.

Conclusion

{¶ 31} Appellant argued that the trial court should have dismissed the charges against her because she was accused of violating an unconstitutional statute. Appellant's argument is correct. R.C. 955.22(D) has been declared unconstitutional on its face in *Cowan*, and appellant's motion to dismiss should have been granted. Appellant's first assignment of error is sustained, and her second assignment of error is moot. The judgment of the trial court is vacated, and the two charges of violating R.C. 955.22(D)(1) are dismissed.

Judgment reversed.

VUKOVICH and DEGENARO, JJ., concur.